UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAMON J. BALDONE, LLC | * | CIVIL ACTION |
| VERSUS | * | NO. 24-543 |
| STARR SURPLUS LINES INSURANCE COMPANY, ET AL. | * | SECTION "P" (2) |

### ORDER AND REASONS

Pending before me is a Motion to Substitute or, in the alternative, to Intervene filed by Dwayne Murray, Chapter 11 Trustee of the Chateau Creole Apartments, LLC. ECF No. 54. Defendants[1] timely filed an Opposition Memorandum, and Trustee Murray timely filed a Reply Memorandum. ECF Nos. 55, 58. Defendants requested oral argument. ECF No. 60. Although the request was untimely as same was filed after the scheduled submission date rather than contemporaneously with the motion or within three days of the opposition, as required by Local Rule 78.1, the Court nonetheless granted oral argument. ECF Nos. 54-3, 61.

After hearing oral argument on Wednesday, January 14, 2026, at counsel's request, the Court scheduled an evidentiary hearing relating to the Rule 17 substitution issue. ECF No. 66. Following the hearing, the Court took the matter under submission. Having considered the record, the evidence, the submissions and arguments of counsel, and the applicable law, Trustee Murray's Motion to Substitute or, in the alternative, to Intervene is GRANTED for the reasons stated herein.

### I. BACKGROUND

Plaintiff Damon J. Baldone, LLC filed this suit alleging that two properties known as Chateau Desa Apartments (located on Alma Street in Houma, Louisiana) and Chateau Creole

---

[1] Defendants are Starr Surplus Lines Insurance Company ("Starr"), Hilltop Specialty Insurance Company, Rokstone Underwriting for and on behalf of Mitsui Sumitomo Insurance Co. (Europe) Ltd (named as Underwriters at Lloyd's, London – Mitsui Sumitomo Insurance Company (Europe) Ltd.) and Lexington Insurance Company.

1

Apartments (located on Monarch Drive in Houma, Louisiana) sustained damage on or about March 4 and 19, 2022, respectively, from theft, vandalism or malicious mischief. ECF No. 1 ¶¶ 1, 10, 11. Plaintiff alleged that Defendants insured those properties and seeks to recover contractual and extra-contractual damages for the alleged failure to pay timely or adjust properly the insurance claims. *Id.* ¶¶ 9, 12-51. Fannie Mae intervened, alleging that the properties are subject to its mortgage securing a $6.7 million note. ECF No. 30.

Approximately three weeks after Plaintiff filed suit, Chateau Creole Apartments, LLC filed for relief under Chapter 11 of the Bankruptcy Code, USBC EDLA Case No. 24-10608. Defendants filed a motion to stay this matter in light of the bankruptcy filing, which the Court granted after finding that resolution of certain issues in the bankruptcy directly affected Chateau Creole's property damage claim asserted in this case. ECF Nos. 37, 44. Later, on January 24, 2025, the bankruptcy judge appointed Dwayne M. Murray as the Chapter 11 Trustee of Chateau Creole Apartments. USBC EDLA Case No. 24-10608, ECF No. 246. Although not technically a party in this case, Trustee Murray filed a Motion to Re-Open on April 7, 2025, which the Court granted. ECF Nos. 45, 46. The Court then issued a new Scheduling Order setting the trial for July 27, 2026, with a discovery deadline of April 9, 2026. ECF No 48. The Court did not re-open the deadline for amending pleadings, which expired on May 31, 2024. ECF No. 20.

Trustee Murray now moves to substitute himself, as Trustee of the Chateau Creole Apartments, LLC, as plaintiff in place of Damon J. Baldone, LLC with respect to all claims asserted on behalf of Chateau Creole Apartments, or alternatively, to intervene so that he may prosecute all claims that have been or could have been asserted by Chateau Creole. ECF No. 54. Trustee Murray asserts that he alone has standing to prosecute any claims of Chateau Creole, that he has been actively involved in this case since April 2025, and Defendants have appeared in the

2

bankruptcy case. *Id.* ¶¶ 4-5, 9, 12; *see also* ECF No. 54-1 at 3-4. He asserts that he is the proper party plaintiff under Rule 25 and Chateau Creole's interests have been transferred to him by operation of law within the meaning of Rule 25(c), or alternatively, he is entitled to intervene as of right or permissively. ECF No. 54 ¶¶ 16-19; No. 54-1 at 3-6. Trustee Murray contends that he is already a proper party based on his appearance and filing of the Motion to Re-Open and participation in the Scheduling Conference, but files this motion in an abundance of caution. ECF No. 54-1 at 2-3.

Defendants oppose the motion, arguing that Trustee Murray cannot retroactively correct Plaintiff's improper filing of this suit seeking damages for a separate legal entity (Chateau Creole Apartments, LLC) as Plaintiff did not have an insurable interest in Chateau Creole's property and thus lacked standing to pursue the claim asserted herein. ECF No. 55 at 1-2, 5-9. They further argue that Trustee Murray cannot establish that substitution is proper under Rule 17(a) because Plaintiff's decision not to file on behalf of, or substitute, Chateau Creole Apartments, LLC was an intentional decision, rather than an honest mistake, considering a prior Chateau Creole Apartments, LLC bankruptcy that divested Plaintiff of any interest in or control over Chateau Creole Apartments, and Trustee Murray can only step into the shoes of Chateau Creole Apartments, LLC without obtaining any greater rights. *Id.* at 2-4, 10-12. Defendants also argue that Trustee Murray's motion is untimely and should have been filed before his first appearance in April 2025 and that Trustee Murray is precluded from substituting or intervening based on "unclean hands." *Id.* at 4, 12-16. Finally, Defendants argue that Chateau Creole Apartments, LLC's claim under the policy is prescribed. *Id.* at 4-5.

In Reply, Trustee Murray argues that he is the real party in interest to prosecute the Chateau Creole Apartment, LLC's claims, he has an interest in this case that may be impaired and is not

3

adequately protected by existing parties, Defendants' "unclean hands" assertion is illogical, and the Court should address Defendants' procedural and substantive defenses on the merits at the appropriate time rather than in the context of this substitution/intervention motion.  ECF No. 58 at 1-2.  Trustee Murray disputes Defendants' assertions that he simply stands in the shoes of Plaintiff and relies on the Bankruptcy Code to define his rights and powers, and Defendants' speculation that Plaintiff filed suit in the wrong name to evade creditors is speculative and contradicted by Fannie Mae's intervention in this case within weeks of its filing.  *Id.* at 4-6.  Trustee Murray argues Defendants cannot establish that he is not the real party in interest because they are judicially estopped by their prior assertion in this lawsuit that he has full authority over Chateau Creole property claims.  *Id.* at 6.  He also reiterates his arguments that substitution is proper and argues that the motion is timely.  *Id.* at 6-9.

## II.    APPLICABLE LAW AND ANALYSIS

This motion raises several distinct questions:  (1) whether Trustee Murray is the real party in interest to assert any claims on behalf of Chateau Creole; (2) whether Trustee Murray may substitute himself in place of Plaintiff; and (3) whether Trustee Murray is entitled to intervene either as of right or permissively if he is not entitled to substitution.

### A.   "Real Party In Interest"

The Federal Rules of Civil Procedure require that, with certain exceptions, an action "be prosecuted in the name of the real party in interest."  FED. R. CIV. P. 17(a)(1).  The purpose of this rule is to ensure that a judgment will be final and res judicata, which protects a defendant from having to twice defend an action, once against the ultimate beneficiary of a right and then against the actual holder of the substantive right.[2]

---

[2] *Wieburg v. GTE Sw., Inc.*, 272 F.3d 302, 306 (5th Cir. 2001).

### 1. Determination of Real Party In Interest

"The real party in interest is the [one] holding the substantive right sought to be enforced, and not necessarily the [one] who will ultimately benefit from the recovery."[3] In a diversity action, federal courts apply state substantive law and federal procedural law.[4] Although the designation of the real party in interest is a procedural determination, a federal court sitting in diversity looks to state substantive law to determine who is the person holding the substantive right sought to be enforced.[5] "[A] party not possessing a right under substantive law is not the real party in interest with respect to that right and may not assert it."[6] Thus, a plaintiff generally cannot bring a claim based upon a contract to which it is not a party.[7] If, however, the real party in interest has assigned the right, the assignee may bring suit in its own name.[8] When a claim belongs to a bankruptcy estate, the trustee is the real party in interest.[9]

There can be no dispute that Trustee Murray is the real party in interest to assert any claim on behalf of Chateau Creole as a result of the bankruptcy filing and his appointment. Had Chateau Creole Apartments, LLC, filed this suit on its own behalf originally, the substitution issue would not be difficult. The issue becomes complicated because Chateau Creole did not file this suit for damages. Rather, Plaintiff filed this suit asserting that it owned the properties at issue and purchased the applicable insurance policies. ECF No. 1 ¶¶ 1, 9, 30. The issue is thus whether

---

[3] *Id.*
[4] *Gasperini v. Ctr. for Hums., Inc.*, 518 U.S. 415, 427 (1996).
[5] *See Farrell Constr. Co. v. Jefferson Par.*, 896 F.2d 136, 140 (5th Cir. 1990).
[6] *Id.*
[7] *See id.* (finding plaintiff was not a "real party in interest" when it was neither a party to the contract nor a third- party beneficiary).
[8] *See, e.g.*, LA. CODE CIV. PROC. art. 698; *see also id*. Official Revision Comment (d) (noting that, "if there has been an assignment of the entire right and the suit is brought in the name of the assignor, the latter has no right of action, and the court cannot adjudicate in the absence of the indispensable party plaintiff, the assignee.").
[9] *Norris v. Causey*, 869 F.3d 360, 366 (5th Cir. 2017) (citing *Wieberg*, 272 F.3d at 306) ("Because the claims are property of the bankruptcy estate, the Trustee is the real party in interest with exclusive standing to assert them.")); *see also* 11 U.S.C. § 541(a).

Trustee Murray, on behalf of Chateau Creole, LLC, is entitled to substitute himself in place of Plaintiff Damon J. Baldone, LLC.

### 2. Substitution, Ratification or Joinder of "Real Party In Interest"

Rule 17(a)(3) provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Thus, the court may not dismiss an action unless a reasonable time has been allowed for the real party in interest to join, ratify, or be substituted in the case.

A Rule 17(a) motion is generally considered timely as long as joinder of the real party in interest remains practical and convenient.[10] After joinder, ratification or substitution, the case proceeds as though it had been commenced by the real party in interest. FED. R. CIV. P. 17(a)(3). Rule 17(a) substitution should be liberally granted where "the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants."[11]

An argument that the plaintiff is not the real party in interest is an affirmative defense that must be asserted with reasonable promptness.[12] Otherwise, the defense is waived.[13] An objection is considered timely so long as joinder of the real party in interest remains practical and convenient;

---

[10] *In re RLB Contracting, Inc.*, 854 F. App'x 614, 615 (5th Cir. 2021).
[11] *Verizon Bus. Glob. LLC v. Hagan*, No. 07-415, 2009 WL 928633, at *2 (E.D. La. Mar. 30, 2009) (Fallon, J.) (quoting *Advanced Magnetics, Inc. v. Bayfront Partners Inc.*, 106 F.3d 11, 20 (2d Cir. 1997)).
[12] Norris, 869 F.3d at 367 (citing *In re Signal Int'l, LLC*, 579 F.3d 478, 487–88 (5th Cir. 2009)); 6A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1554 (3d ed. 2025) (noting that real party in interest objection must typically be raised ahead of trial).
[13] *Rogers v. Samedan Oil Corp.*, 308 F.3d 477, 483 (5th Cir. 2002) ("In *Gogolin & Stelter v. Karn's Auto Imports*, Inc., 886 F.2d 100 (5th Cir. 1989) we held that if a defendant who fails to assert that a party is not the real party in interest in a timely manner, the argument is waived.").

an objection is considered untimely when it hinders the goal of judicial efficiency or manifests the defendant's intention to "lay behind the log" in ambush.[14]

Although Rule 17 is phrased without qualifications, courts have added a judicial gloss to limit its application to certain situations. Specifically, the real party in interest must establish that the determination of the proper party to sue was difficult or that an understandable mistake[15] has been made before the court must allow a reasonable time for substitution or ratification before dismissal.[16] Rule 17(a)(3)'s judicial gloss is not meant to detract from the permissive text or serve as a high, extratextual hurdle.[17] Rather, it merely ensures that the interests of justice are served[18] by requiring a good-faith, nonfrivolous mistake before ratification, joinder or substitution.[19] When, however, the plaintiff has been deceitful, dilatory or strategic in making or failing to correct a Rule 17 issue or makes a mistake on an obvious point, courts have found dismissal warranted.[20]

Determining whether a party has established an "understandable mistake" requires analysis of the particular circumstances that led to the failure, as well as the steps taken to correct the mistake.[21] Courts have reached differing conclusions when faced with a claim of understandable

---

[14] *In re Signal Int'l*, 879 F.3d at 488 (citations omitted).
[15] An understandable mistake occurs when determination of the correct party to bring the action is difficult. *Wieburg*. 272 F.3d at 308 (citations omitted).
[16] FED. R. CIV. P. 17 advisory Committee notes to 1966 amendment; *see also* 6A WRIGHT & MILLER, *supra* note 14, § 1555 ("[Rule 17(a)(3) reflects the general policy of the drafters of the federal rules that the choice of a party at the pleading stage ought not have to be made at the risk of a final dismissal of the action should it later appear that there had been an error.").
[17] *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 165 (citing *Magallon v. Livingston*, 453 F.3d 268, 273 (5th Cir. 2006)); *In re Whittington*, 530 B,R. 360, 394 (Bankr. W.D. Tx. 2014) (citations omitted).
[18] *Rideau*, 819 F.3d at 165 (quoting *Wieburg*, 272 F.3d at 308).
[19] *Rideau*, 819 F.3d at 166 (citing cases); *see Magallon*, 453 F.3d at 273 (finding court erred in dismissing a case where the plaintiff offered a "reasonable explanation").
[20] *See, e.g.*, *Delor v. Intercosmos Media Grp., Inc.*, 232 F.R.D. 562, 567 (E.D. La. 2005) (Barbier, J.) (denying leave because plaintiff's filing suit in his own name rather than corporate owner was not due to honest and understandable mistake).
[21] *See Magallon*, 453 F.3d at 273 (finding that plaintiff's "belief, not wholly unfounded, that [his friend] . . . was incompetent" was a sufficiently "reasonable explanation" to avoid dismissal); *Asset Funding Grp., LLC v. Adams & Reese, LLP*, No. 07–2965, 2009 WL 799752, at *4–5 (E.D. La. Mar. 23, 2009) (collecting cases and explaining that "[c]ases in which the court has chosen dismissal over joinder or ratification have found lack of an understandable mistake because of deliberate, and often deceitful or at least self-serving, actions of the plaintiff"); *Silva v. Grp. Prac.*

mistake based on a party's failure to understand its own corporate structure, which misunderstanding resulted in it naming the wrong entity in a corporate family as the plaintiff. For instance, in *Verizon Business Global, LLC v. Hagan*,[22] plaintiff filed suit to recover damages to an underground fiberoptic cable. After filing suit, plaintiff discovered that its wholly owned subsidiary owned the damaged cable, not the parent/named plaintiff. After finding that the plaintiff demonstrated the difficulty of determining the proper party due to numerous mergers, acquisitions, corporate transactions and name changes between the time the cable was originally installed and the damage, the court found there was an understandable mistake and allowed the substitution of the subsidiary as the real party in interest.[23]

A court risks reversal when it fails to consider whether a mistake was understandable or disregards a reasonable explanation.[24] For instance, in *Weiburg v. GTE Southwest Inc.*, the Fifth Circuit reversed a dismissal because the district court failed to explain why the less drastic alternatives of allowing the bankruptcy trustee to join, ratify or substitute in place of the debtor plaintiff were inappropriate, particularly given that the dismissal resulted in forfeiture of any potential recovery to the creditors because the statute of limitations had expired.[25]

Likewise, in *RLB Contracting, Inc. v. Genesis Energy, L.P.*,[26] sixteen months after an entity filed a negligence claim as owner of the pipeline, the opposing party sought to dismiss the claim on the basis that a subsidiary owned the pipeline. Rejecting the entity's argument that its complex

---

*Affiliates*, 125 F. App'x 541, 542 (5th Cir. 2005) (affirming dismissal where plaintiff was repeatedly informed that his claims were the property of the estate and required ratification, joinder, or substitution by the trustee).
[22] No. 07-415, 2009 WL 928633 (E.D. La. Mar. 30, 2009).
[23] *Id.* at 3. *But see BCC Merch. Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 459 (N.D. Tex. 2015) (denying leave to amend to substitute affiliate in breach of contract action where plaintiff lacked privity of contract with defendant and plaintiff failed to provide any explanation for that failure).
[24] *Rideau*, 819 F.3d at 166 (citing *Wieburg*, 272 F.3d at 308; *Magallon*, 453 F.3d at 273).
[25] 272 F.3d at 309.
[26] No. 18-3844, 2020 WL 5880918 (S.D. Tex. Oct. 20, 2020), *rev'd sub nom.*, *In re RLB Contracting, Inc.*, 854 F. App'x 614 (5th Cir. 2021).

8

corporate structure rendered its mistake understandable, the court denied leave to amend and dismissed the claim.[27] On appeal, the Fifth Circuit reversed, finding that the real party in interest determination was complicated by the entity's belief that, as the parent corporation and its status as debtor, along with the U.S. Coast Guard's assertion that it was liable for the costs of remediation, its mistaken belief that it was the proper plaintiff was understandable.[28]

### 3. Analysis

Defendants have recognized that the insurance coverage at issue is part of a complex insurance program whereby a named insured (JKL Group, LLC) evidently assimilated various commercial property owners to share coverage issued by various insurer participants, each with "follow-form" coverage but under their own policy numbers. The "insureds" were identified on an accompanying Schedule of Values, which was incorporated into the policy.

> The Declarations page of the policy reflects the "Name of the Insured" as:
>
> JKL Group, LLC and/or any subsidiary, affiliated, controlled or associated companies, trust, association, fund, person or beneficiary, holding company or partnership (including subsidiaries thereof) . . . ; the interest of any the Named Insured in a partnership or joint venture with an interest in a covered **Location**/property; and any client entity, (regardless of ownership or entity form[)] whose assets or portion of assets are controlled or managed by the Named Insured and/or for whom the Named Insured is required by written or oral contract or provide insurance.
>     . . . .
> All hereafter referred to as the "**Insured**"

ECF No. 77-1 at 4. The Policy Endorsement reflects JKL Group, LLC as the insured with the endorsement issued to Damon J. Baldone, LLC for insurable values of $25,432,996 per the values reported on the Statement of Values. *Id.* at 1.

The Participation Page then defines the "Insured" as:

---

[27] 2020 WL 5880918, at *5.
[28] 854 F. App'x at 615. The Fifth Circuit found no evidence of bad faith, prejudice or delay. *Id.*

9

> Each Designated Named Insured listed on the **JKL Group, LLC (hereafter "JKL")** Master of Statement of Values on file, or for Newly Acquired property, as shown on the cover page of the signed Premium Binder on file with CRC Insurance Services, Inc.;
>
> And/or any subsidiary, affiliated, controlled or associated companies, trust, association, fund, person or beneficiary, holding company or partnership (including subsidiaries thereof) . . . and any client entity (regardless of ownership or entity form[)] whose assets or portion of assets are controlled or managed by the Designated Named Insured and/or for whom the Designated Named Insured is required by written or oral contract to provide insurance.

*Id.* at 5. On the JKL Schedule of Values, lines 1 through 16 reflect the location name of Chateau Creole with the "Named Insured" listed as Damon J. Baldone, LLC. ECF No. 77-3 at 1. The AIV Statement of Values similarly lists Damon J. Baldone, LLC as the "Named Insured" associated with Chateau Creole. ECF No. 77-5 at 1. Although the property insurance quote form indicates that the obligation to prepare the Statement of Values rested with the insured, it is not clear whether JKL or Baldone prepared same. ECF No. 77-22 at 5. Additional named insureds were included in the policy as required by JKL Group, LLC, with advice to insurers waived and CRC Insurance Services authorized to issue evidence of insurance. ECF No. 77-1 at 8.

The same plaintiff, DJB, filed suit based on the same policy on behalf of Chateau Creole for contractual and extra-contractual damages following Hurricane Ida. After Hurricane Ida, JKL Group, LLC instructed the insurers on where to send payments, and the insurers sent unallocated advances of more than $8 million to the named insured "JKL Group, LLC," which then issued checks to the various entities owned by Baldone Investment Group, LLC, with the first relevant check payable to "Damon J. Baldone, LLC & Chateau Creole Apts & Fannie Mae . . . c/o Walker & Duplap" and the others payable to "Chateau Creole Apts LLC & Fannie Mae . . . c/o Walker & Dunlap." ECF Nos. 77-9, 77-11, 77-15, 77-25.

10

During the almost 4-hour long evidentiary hearing on February 2, 2026, the Court heard testimony from Damon J. Baldone during which he explained why he thought DJB was the proper named insured and that he did not do so in any deceitful effort to deprive creditors of any payment. ECF No. 75.  Defendants dispute Baldone's assertion that he did not know that Chateau Creole Apartments, LLC was itself an additional named insured until after he filed suit.  They cite to the application for commercial insurance policy, which lists the insured as "Damon J. Baldone, LLC" or "Damon J. Baldone LLC et al."  ECF No. 77-22 at 1; ECF No. 77-23 at 1.  And although the Renewal form similarly indicates "Damon J. Baldone et al," the "Supplemental Names (Other Named Insureds) Schedules" of that application specifies "Chateau Creel [sic] Apartments, LLC" as a named insured.  ECF No. 77-21 at 1, 14.

Baldone explained that, although he is an experienced attorney who regularly handles insurance litigation, he has never handled a case involving this type of complicated commercial insurance policy issued through a broker such as JKL Group, LLC.  Prior to filing suit, Baldone requested that his insurance agent provide him with a copy of the policy because he did not maintain copies of the insurance application or policy.  After he received the Statement of Values showing Damon J. Baldone, LLC as the named insured for all of the LLC property owners, he filed suit in the name of Damon J. Baldone, LLC.  Baldone disputed Defendants' assertions that he named Damon J. Baldone, LLC as plaintiff to divert funds from his creditors and asserted he did so based on his mistaken reliance on the information set forth in the Schedule of Values.  *See, e.g.*, ECF Nos. 77-3, 77-5.  Baldone also points out that all Hurricane Ida insurance proceed checks included creditor Fannie Mae as a payee, and Fannie Mae intervened in this suit shortly after its filing, thus undermining Defendants' argument that he intentionally filed suit in the name of the

wrong entity to secretly obtain the insurance proceeds to the detriment of his creditors. *See* ECF Nos. 25, 77-11, 77-15.

During the hearing, Defendants introduced evidence that unquestionably demonstrates that Baldone's insurance application and policy reflects that Chateau Creole, LLC was itself a named insured under the policy. Defendants also established that Baldone should have known that Chateau Creole Apartments, LLC, which owns the property, was itself a named insured and should have been the named plaintiff in this suit. That, however, merely establishes that Baldone was wrong in his conclusion that Damon J. Baldone, LLC was the proper plaintiff rather than Chateau Creole Apartments, LLC. The issue under Rule 17, however, is not whether Baldone was correct in his conclusion that Damon J. Baldone, LLC was a proper party plaintiff. The issue is whether Baldone made a good-faith, nonfrivolous mistake or whether he was deceitful, dilatory or strategic in making that Rule 17 mistake or in failing to correct it promptly.

Given Baldone's testimony and considering the complexity of this unusual type of policy, coupled with Fannie Mae's prompt interventions and inclusion as payee of insurance proceeds checks, Baldone's mistaken conclusion that he was the named insured and/or had authority to file suit for the separate entity known as Chateau Creole Apartments, LLC, while incorrect, is not unreasonable or deceitful conduct. Moreover, granting substitution is consistent with the general desire that litigation be resolved on the merits, Rule 17's requirement that the Court allow substitution before dismissing a case, and Rule 17's goal of ensuring that a judgment will be final and res judicata and protecting a defendant from having to twice defend an action, once against the ultimate beneficiary of a right and then against the actual holder of the substantive right. Further, it causes no prejudice to Defendants as the same claims for damages to the same properties that have been at issue since inception remain unchanged, and Defendants timely inspected the

property and conducted discovery regarding same despite the naming of DJB rather than Chateau Creole Apartments, LLC. Accordingly, granting Trustee Murray leave to substitute as plaintiff for Damon J. Baldone, LLC with regard to the property damage to the Chateau Creole Apartments owned by the bankrupt entity is proper under Rule 17(a)(3).[29]

### B. Intervention

#### 1. Intervention of Right

To be entitled to intervene as of right, movant must demonstrate that (1) he timely applied for intervention; (2) he has an interest relating to the property or transaction that is the subject of the case; (3) disposition of the case may practically impair or impede his ability to protect that interest; and (4) he is inadequately represented by the existing parties.[30] "Failure to satisfy one requirement precludes intervention of right,"[31] so the absence of any one element requires denial of intervention as of right.[32]

Movant bears the burden of establishing its right to intervene.[33] Thus, the proposed intervenors bears the burden of proving that the existing parties do not adequately represent their interest.[34] This burden is "minimal," however, and the potential intervenor "need only show that the representation '*may* be' inadequate."[35] Although this burden is minimal, it cannot be treated as

---

[29] The Court need not address Rule 15(c)'s relation back provision because the same result is reached solely on the basis of the last sentence of Rule 17(a). *P.S. Int'l Ltd. v. Caribbean Sealift, Ltd*., No. 93-2622, 1996 WL 531838, at *1 (E.D. La. Sept. 17, 1996) (citing 6A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1555 (3d ed.)).
[30] *Adam Joseph Res. v. CNA Metals Ltd*., 919 F.3d 856, 865 (5th Cir. 2019) (citing FED. R. CIV. P. 24(a); *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994)).
[31] *Haspel & Davis Milling & Planting Co. v. Bd. Of Levee Comm'rs of the Orleans Levee Dist*., 493 F.3d 570, 578 (5th Cir. 2007).
[32] *Graham v. Evangeline Par. Sch. Bd*., 132 F. App'x 507, 511 (5th Cir. 2005) (citing *United States v. Franklin Par. Sch. Bd*., 47 F.3d 755, 758 (5th Cir. 1995)); a*ccord. Abita Springs v. U.S. Army Corps of Eng'rs,* No. 15-451, 2015 WL 13533518, at *3 (E.D. La. Sept. 25, 2015) ("Failure to meet any of the four elements is fatal to intervention.") (citing *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest,* 579 F.2d 964, 967 (5th Cir. 1978)).
[33] *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016).
[34] *Sierra Club*, 18 F.3d at 1207 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).
[35] *Id.* (emphasis added) (quoting *Trbovich*, 404 U.S. at 538 n.10); *see also Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014) (internal quotations omitted) (quoting *Sierra Club*, 18 F.3d at 1207; *Haspel & Davis*, 493 F.3d at 578 (citation omitted).

so minimal as to write the requirement completely out of the rule.[36] "[T]he inquiry under [Rule 24](a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application," and "intervention of right must be measured by a practical rather than technical yardstick."[37]

      a.    <u>Timeliness</u>

The timeliness factor[38] guards against prejudicing the original parties by failure to apply sooner, and federal courts should allow intervention "where no one would be hurt and greater justice could be attained."[39]

      b.    <u>Interest in the Underlying Litigation</u>

The second factor relates to the movant's interest in the underlying litigation. As Trustee of the Chateau Creole's bankruptcy estate, Trustee Murray has an interest in the underlying litigation.

      c.    <u>Impairment and Adequate Representation</u>

The third and fourth factors relate to whether disposition of the case may practically impair or impede movant's ability to protect that interest and whether movant is adequately represented by the existing parties.

    **2. Permissive Intervention**

Under Rule 24(b) of the Federal Rules of Civil Procedure, permissive intervention is authorized upon timely motion when (1) a federal statute provides for a conditional right to intervene or (2) the intervenor has a claim or defense that shares with the main action a common

---

[36] *Edwards v. City of Hou.*, 78 F.3d 983, 1005 (5th Cir. 1996) (citation omitted).
[37] *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202 (5th Cir. 1992) (quoting *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991)).
[38] In assessing timeliness, the court considers: (1) the length of time during which the intervenor knew or should have known of his interest in the case; (2) the extent of prejudice to the existing parties; (3) the extent of prejudice to the would-be intervenor; and (4) unusual circumstances. *CNA Metals*, 919 F.3d at 865 (citation omitted).
[39] *Id.* (quoting *Sierra Club*, 18 F.3d at 1205).

question of law or fact and intervention will not unduly delay or prejudice the existing parties.[40] After assessing whether movant has a claim or defense that shares a question of law or fact with the main action, the court then exercises its discretion to determine whether intervention should be allowed.[41]  Indeed, courts have broad discretion in allowing intervention,[42] and it may be denied even though there is a common question of law or fact or the requirements of Rule 24(b) are otherwise satisfied.[43]

Although timely application, commonality of fact or legal issues, and undue delay or prejudice to the original parties are required considerations for permissive intervention, the court also properly considers, "among other things, 'whether the intervenors' interests are adequately represented by other parties' and whether they 'will significantly contribute to full development of the underlying factual issues in the suit.'"[44]  Indeed, the Fifth Circuit continues to recognize that, because the permissive intervention decision is highly discretionary, the court may consider adequacy of representation and shared objectives in its analysis.[45]

### 3. Analysis

Having found that Rule 17 substitution is proper, the Court need not address the alternative intervention motion.  Were that issue necessary to the resolution, Trustee Murray has demonstrated

---

[40] FED. R. CIV. P. 24(b)(1)(A)-(B); *see also Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977).
[41] *Stallworth*, 558 F.2d at 269 (citation omitted).
[42] *See Mac Sales Inc. v. E.I. Dupont de NeMours*, No. 89-4571, 1995 WL 581790, at *4 (E.D. La. Sept. 29, 1995) (Clement, J.); *Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 824 (5th Cir. 2003) (stating orders denying permissive intervention are reviewed for clear abuse of discretion and will only be reversed in extraordinary circumstances); *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 471-72 (5th Cir. 1984) (en banc) (stating permissive intervention is wholly within the discretion of the district court).
[43] *New Orleans Pub. Serv.*, 732 F.2d at 471 (quotations omitted).
[44] *Id.* at 472 (quoting *Spangler v. Pasadena City Bd. Of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191-92 (2d Cir. 1978)); *see also Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987).
[45] *See, e.g.*, *Second Amend. Found. Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 23-10707, 2023 WL 8597495, at *2 (5th Cir. Dec. 12, 2023); *Aransas Project v. Shaw*, 404 F. App'x 937, 942 (5th Cir. 2010) (noting shared same objectives in affirming denial of permissive intervention); *Staley v. Harris Cnty. Tex.*, 160 F. App'x 410, 414 (5th Cir. 2005) (affirming denial of permissive intervention when application was untimely and the existing party adequately represented proposed intervenor's interest).

that intervention would be proper, both as of right and permissively. After Trustee Murray moved to re-open the case in April, a scheduling order was issued in May. After it became apparent that the Trustee's appointment and filing of the motion to re-open did not effect a substitution, intervention was sought in December. Given the Trustee's participation since the re-opening of the case, the Court cannot find that this alternative motion to intervene to protect its interest is untimely. Further, disposition of the case may impair or impede Trustee Murray's ability to protect its interest, and he is not adequately represented by Plaintiff because Trustee Murray's interest in recovering for creditors conflicts with Plaintiff's interest in a recovery that exceeds creditors' claims to allow for distribution to the bankruptcy LLC members. At the very least, Trustee Murray has a claim or defense that shares common questions of law or fact with Plaintiff's claim, and intervention would not unduly delay or prejudice the existing parties. As such, intervention would be proper were substitution not appropriate.

### III.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Trustee Murray's Motion to Substitute or, in the alternative, to Intervene (ECF No. 54) is GRANTED.

New Orleans, Louisiana, this __10th__ day of February, 2026.

*[signature]*
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE
